UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CEDAR DEVELOPMENT EAST, LLC,

                               **Plaintiff,**

  vs.                                                               1:21-cv-289
                                                                          (MAD/TWD)

**TOWN BOARD OF HURLEY,** *and individual members*, **JOHN PERRY, MICHAEL BOMS, MELINDA McKNIGHT, PETER HUMPHIRES, BARBARA ZELL, PLANNING BOARD OF HURLEY,** *and individual members*, **MITCHELL COHEN, KARL BRUECKNER, DIANA CLINE, WAYNE RICE, RAYMOND PALMER, and TONY BONAVIST,**

                                 **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**JAMES BRYAN BACON**                **JAMES BACON, ESQ.**
PO Box 575
New Paltz, New York 12561
Attorneys for Plaintiff

**SOKOLOFF STERN LLP**               **BRIAN S. SOKOLOFF, ESQ.**
179 Westbury Avenue                     **CHELSEA WEISBORD, ESQ.**
Carle Place, New York 11514
Attorneys for Defendants

**MELTZER LIPPE GOLDSTEIN**       **MARK A. RADI, ESQ.**
**& BREISTONE, LLP**
190 Willis Avenue
Mineola, New York 11501
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

1

Plaintiff Cedar Development East initiated this action in the Supreme Court of the State of New York, County of Ulster on February 3, 2021. *See* Dkt. No. 2. On March 10, 2021, Defendants removed the state court action to this Court. *See* Dkt. No. 1. On March 15, 2021, Plaintiff filed a motion to remand, which the Court denied. *See* Dkt. Nos. 5, 23.

Plaintiff alleges violations of the Equal Protection, Substantive Due Process, and Procedural Due Process Clauses of the Fourteenth Amendment, as well as violations of the Fair Housing Act and its state law equivalent. Defendants move to dismiss Plaintiff's complaint, arguing that Plaintiff's claims for equitable relief are moot and unripe, and that Plaintiff does not state a constitutional or housing discrimination claim. For the reasons below, Defendants' motion is granted.

## II. BACKGROUND

In February 2018, Plaintiff, Cedar Development East, sought site plan approval and a special permit to convert the old West Hurley School into a 46-unit residential building. Dkt. No. 2 at 2. Plaintiff alleges that Defendants Planning Board of Hurley, Mitchell Cohen, Karl Brueckner, Diana Cline, Wayne Rice, Raymond Palmer, and Tony Bonavist (collectively, "Planning Board Defendants") delayed the State Environmental Quality Review Act ("SEQRA")[1] review of the project. *Id.* While the Planning Board Defendants delayed SEQRA review for over a year, Plaintiff alleges that Defendants Town Board of Hurley, John Perry, Michael Boms, Melinda McKnight, Peter Humphries, and Barbra Zell (collectively, "Town Board Defendants") enacted Local Law 4 ("LL4") to effectively prohibit the project. *Id.* LL4 limits multi-family housing to no more than four units and prohibits any multi-family housing in existing buildings exceeding 120 feet in length. *Id*. at 37.

---

[1] N.Y. Envtl. Conserv. Law § 8-0101 *et al.*

2

Plaintiff alleges that Defendants had initially supported the plan to turn the former West Hurley School into a 46-unit apartment complex. *Id.* at 5. For example, on June 21, 2017, at a pre-planning meeting, Defendants expressed support for the project because it "conformed with zoning, would place the property back on the Town's tax roll and would increase affordable housing opportunities." *Id.* at 5. On May 7, 2018, Plaintiff appeared before the Planning Board and gave an overview of the project. *Id.* at 9. "The Planning Board was generally supportive of converting the [school] to residential use," Plaintiff alleges. *Id.* On June 1, 2018, a town planner issued a report of the project's environmental impacts and found no detrimental effects. *Id.* at 9, 192-98. Then, on July 6, 2018, Plaintiff convened a meeting at the Ulster County Planning Department, which Defendant Perry attended, where the County's need for affordable housing was discussed. *Id.* at 10-11. The participants agreed that converting the school into residential units would benefit the community. *Id.* at 11.

Defendant Planning Board of Hurley was the lead agency for SEQRA review of the project. *Id.* at 9. Through the end of 2018, Plaintiff and the Planning Board worked collaboratively in the SEQRA review process. *See id.* at 9-13. On October 2, 2018, the Planning Board stated it was satisfied with the traffic analysis but that a second, backup water well was needed. *Id.* at 13. A hydrologist had previously found that an existing well on the site was more than double the design flow needed to serve 46 residential units. *Id.* at 12. Nonetheless, Plaintiff coordinated with the Ulster County Department of Health and a private engineer to identify a location for the additional well site. *Id.* at 13. Plaintiff received approval from the Ulster County Department of Health for location and testing of the new well. *Id.* at 14. The well was drilled on December 19, 2018, but due to cold weather, testing would not occur until April 15, 2019. *Id.*

3

In early 2019, however, Defendants abruptly shifted to opposing and obstructing the project.  The principals of Plaintiff, Kerry Danenberg and Kenan Gunduz, also own and operate residential properties in Brooklyn, New York.  *Id.* at 4.  A tenant group for one of these properties contacted Defendants and town members about alleged building violations in Plaintiff's principals' other properties.  *Id.* at 14.  Residents of West Hurley subsequently formed the West Hurley Neighborhood Association and began to organize against the project.  *Id.* at 15-16.  Following a March 19, 2019 Town Board meeting, in which numerous residents expressed opposition to the project, Defendant Town Board began to obstruct the project.  *Id.* at 17.

The following day, on March 20, Defendant Perry advised a resident that he had already drafted a letter "requesting the Onteora school district to hold off on the closing until all environmental impacts have been done, and an open meeting with the developers to address the citizens [sic] concerns."  *Id.*  In the letter, Defendant Perry re-raised concerns about water supply and traffic flow issues.  *Id.*  The Town Board held a second meeting on April 17, 2019, for residents to express their concerns over the project.  *Id.* at 21.  Plaintiff alleges that the "residents' fear, anger and underlying anti-Semitic and racial biases had been unleashed.  They confronted Mr. Danenberg charging he was [a] slumlord[.]"  *Id.*

On May 7, 2019, Defendant Perry called for an emergency Town Board meeting to circulate a proposed moratorium to prohibit the Planning Board from voting on the project's site plan approval.  *Id.* at 22-23.  The Town Board adopted the moratorium on May 15.  *Id.* at 23.  The School District and the Ulster County Planning Board both opposed the moratorium.  *Id.*  The Ulster County Board stated as follows:

> The County Planning Board has a long history of supporting the development of a variety of types of housing to serve various economic positions of all our residents.  Studies, produced by the County Planning Department have indicated that there is a

4

> significant gap between demand for housing to support our workforce and housing stock at the municipal, county and regional levels. Based on a GIS analysis of the Town of Hurley, only seven multifamily structures exist within the Town, with five of them in the West Hurley vicinity. Clearly, the town is not being overrun by multifamily housing.

*Id.* Nonetheless, Plaintiff alleges that Defendants began requiring additional, unnecessary, and duplicative tests, such as a seventy-two hour water pumping test on the wells and additional traffic studies. *Id.* at 25-33. Defendant Town Board member Michael Boms stated the town's opposition to allowing the project to move forward was that, "we want to protect our culture." *Id.* at 30. Plaintiff alleges that the duplicative testing requirements and other stonewalling tactics by Defendants delayed a public hearing on the project until August 3, 2020. *Id.* at 38.

On October 26, 2020, the Town Board Defendants passed LL4, which effectively prohibited the project. *Id.* at 43. And although on January 4, 2021, the Planning Board Defendants issued a negative SEQRA declaration, allowing the project to move forward, LL4 still barred it. *Id.* at 45.

To challenge Defendants' delay of its project, Plaintiff initiated this action in Ulster County Supreme Court on February 4, 2021. *See* Dkt. No. 1. On March 19, 2021, Defendants conceded in state court that LL4 was "void as a matter of law" for its own failure to comply with SEQRA requirements and repealed it. *See* Dkt. No. 13-7. And on August 31, 2021, approximately three and half years after Plaintiff initially sought approval, the Planning Board Defendants approved Plaintiff's application for a site plan and special use permit. *See* Dkt. No. 40-3.

On August 5, 2021, this Court denied Plaintiff's motion to remand. *See* Dkt. No. 23. In its Memorandum-Decision and Order, the Court held that Plaintiff's claims seeking to void LL4 were moot because Defendants had repealed it. *Id.* at 13. Specifically, the Court held that Plaintiff's

claims that LL4 violated N.Y. Town Law 272-a and SEQRA, and that Plaintiff was entitled to relief under the "special facts" doctrine, were moot. Still remaining are Plaintiff's claims that LL4 violated the Fourteenth Amendment's Equal Protection clause and the Fair Housing Act, and that the adoption of the moratorium and LL4 violated Plaintiff's federal and state due process rights. Dkt. No. 2 at 47-51. Defendants have moved to dismiss the remaining claims. *See* Dkt. No. 40.

### III. DISCUSSION

**A.   Standard of Review**

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Dutrow v. New York State Gaming Commission*, No. 13-cv-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. Appx. 56 (2d Cir. 2015). "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,] subject-matter jurisdiction)." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [ ] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" *Greenblatt v. Gluck*, No. 03 Civ. 597, 2003 WL 1344953, *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1992)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

7

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558 or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.    Mootness**

"Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to those cases which present a 'case or controversy.'" *Islam v. New York State Bd. of Parole*, No. 9:13-CV-0854, 2016 WL 3943668, *2 (N.D.N.Y. June 2, 2016) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). "Federal Courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 568 U.S. 165, 171 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). Accordingly, "in order for there to be a valid exercise of subject matter jurisdiction, a federal court must have before it an actual controversy at all stages of review, not simply at the time it is filed." *In re Flanagan*, 503 F.3d 171, 178 (2d Cir. 2007). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

Defendants seek to dismiss Plaintiff's claims for equitable relief because LL4 has been repealed and Plaintiff's site plan application has been granted. *See* Dkt. No. 40-5 at 20. Specifically, Defendants seek to dismiss Plaintiff's claim for injunctive relief pursuant to Article 78 as well Plaintiff's first cause of action under the Fair Housing Act and equal protection clause. *Id.* at 23. Plaintiff, in its response, does not identify equitable relief which it still seeks from this Court, and the Court is unable to identify any. *See* Dkt. No. 45 at 15-16. Plaintiff's claim pursuant to Article 78 seeking injunctive relief to enjoin the application of LL4 to the project and ordering the Planning Board Defendants to grant site plan approval, *see* Dkt. No. 2 at 58, is therefore dismissed as moot. LL4 has already been repealed and site plan approval granted. Accordingly, there is no injunctive relief for the Court to grant.

Plaintiff's first cause of action, which states claims under both the equal protection clause and the Fair Housing Act, seeks "an award of compensatory and punitive damages as well as attorney's fees[.]" *Id.* at 48. Plaintiff's first cause of action also seeks to annul LL4. *See id.* at 57. To the extent Defendants seek to dismiss as moot the claim for equitable relief in Plaintiff's first cause of action, it is granted. Plaintiff does not indicate any equitable relief it still seeks. But to the extent that Defendants' motion seeks to dismiss Plaintiff's entire first cause of action as moot, that is denied. Plaintiff still seeks compensatory and punitive damages under the equal protection clause and the Fair Housing Act.

**C.     Ripeness**

As a jurisdictional prerequisite, a federal court may only entertain a plaintiff's claim if the claim is ripe for adjudication. *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). A case is ripe when it presents a "'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013)

9

(quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)).  A claim is not ripe when it depends on some future event, which may never occur.  *See id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)).

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 187-94 (1985), in a case involving a Fifth Amendment takings claim, the Supreme Court created a two-pronged test to determine ripeness: (1) the government agency must have issued a "final decision" on the matter and (2) the plaintiff must have sought just compensation through state procedures before resorting to federal court.[2]  The *Williamson County* Court explained the difference the between the two prongs as:

> the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

*Williamson County*, 473 U.S. at 193.

The Second Circuit has routinely applied the first prong, known as the finality requirement, to equal protection and due process claims, like Plaintiff brings here.  *See, e.g.*, *Murphy*, 402 F.3d at 349; *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("The ripeness requirement of *Williamson*, although announced in a takings context, has been extended to equal protection and due process claims asserted in the context of land use challenges").  The second prong, requiring the exhaustion of state procedures, however, does not apply outside of the Fifth Amendment context.  *See Murphy*, 402 F.3d at 349-50.

---

[2] In *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), the Supreme Court overturned the second prong of *Williamson County*.  *Knick*, however, left "untouched" *Williamson County's*

In the land use development context, a final decision requires that a development plan be "submitted, considered and rejected by the governmental entity with the power to implement zoning regulations." *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008) (citation omitted).  The final decision requirement ensures that a federal court has the benefit of a fully developed record, has knowledge of how the regulation will be applied to the particular parcel, enforces the "long-standing principle that disputes should be decided on non-constitutional grounds whenever possible," and "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Id.* (quotations omitted). "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury[.]" *Williamson County*, 473 U.S. at 193.

In *Williamson County*, the Supreme Court found that the plaintiff had not received a final decision where the plaintiff "did not ... seek variances that would have allowed it to develop the property according to its proposed plat." *Williamson County*, 473 U.S. at 188.  The Second Circuit "has ... interpreted *Williamson County* as 'condition[ing] federal review on a property owner submitting at least one meaningful application for a variance.'" *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014); *see also Murphy*, 402 F.3d at 342 (finding that the plaintiffs had not obtained a final decision from local authorities because they did not pursue an appeal or variance available to them under the applicable local law); *Dougherty*, 282 F.3d at 89 (concluding that the plaintiff had not received a final decision where he did not seek a variance that could have permitted his desired construction).

---

holding that "plaintiffs may challenge only final government decisions." *Pakdel v. City & Cnty. of San Francisco, California*, 141 S. Ct. 2226, 2229 (2021) (internal quotations omitted).

Defendants argue that Plaintiff has not met the finality requirement because no final determination on Plaintiff's site plan application or SEQRA review was issued prior to the commencement of the instant case. *See* Dkt. No. 45-5 at 25. Plaintiff argues that a final determination was not required for two reasons. First, Plaintiff argues that "'exhaustion of state/administrative remedies is not required prior to commencing a Section 1983 claim.'" Dkt. No. 45 at 18 (quoting *Wg Woodmere Llc v. Town of Hempstead*, No. CV 20-3903, 2021 U.S. Dist. LEXIS 160290, *39 (E.D.N.Y. Aug. 23, 2021). Plaintiff confuses finality and exhaustion. Defendants do not assert that Plaintiff was required to exhaust state remedies. Rather, Defendants argue that Plaintiff never received a final determination as required by the first prong in *Williamson*. As the Second Circuit has repeatedly held, the finality requirement applies to section 1983 claims.[3] The Court also finds, and Plaintiff does not dispute, that the finality requirement applies to all of Plaintiff's other claims. *See, e.g.*, *Rehab. Support Servs., Inc. v. Town of Colonie*, No. 115CV589, 2018 WL 1415199, *2 (N.D.N.Y. Mar. 20, 2018) ("The Second Circuit has extended this 'final decision' requirement to discrimination claims under the FHA …"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 598 (S.D.N.Y. 2013) ("The final decision requirement also applies to land use disputes arising under New York law"); *Easton LLC v. Inc. Vill. of Muttontown*, No. CV 11-4791, 2013 WL 1149149, *3 (E.D.N.Y. Mar. 19, 2013) (holding that finality requirement applies to due process and equal protection claims under New York state law).

Second, Plaintiff argues that it would be futile to receive a final decision. In general, a

---

[3] The exact paragraph that Plaintiff asserts exempts the requirements of *Williamson* to Section 1983 actions discusses the difference between finality and exhaustion. In denying its motion to remand, the Court already admonished Plaintiff that cases on which it relied "do not stand for the proposition Plaintiff states." Dkt. No. 23 at 7. Plaintiff's counsel is reminded that more care is required when making representations to the Court. *See* Fed. R. Civ. P. 11(b)(2).

"property owner ... will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile." *Murphy*, 402 F.3d at 349. Specifically, "a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Id.* at 349. Although the "precise contours" of the futility exception are not well-defined, "courts in this Circuit have recognized that 'mere allegations of open hostility [are] not sufficient to invoke the futility exception.'" *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 408 (E.D.N.Y. 2008) (quoting *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 161 (S.D.N.Y. 2000)). Courts consider the defendants' "hostility, delay and obstruction in application of the futility exception." *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 160 (S.D.N.Y. 2000); *Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014) (holding that the futility exception applies where the town uses "repetitive and unfair procedures" to move the "finish line ... just one step away").

Plaintiff argues that seeking a final decision for the project would have been futile. *See* Dkt. No. 45 at 18. Indeed, Plaintiff offers a lengthy and detailed timeline demonstrating Defendants' apparent obstinance and an unliklihood that the project would be approved. For example, Plaintiff argues that it would have been futile to apply for a variance from LL4, because LL4 was enacted with the intent to prevent the project from proceeding.

The Court, however, cannot conclude that it was futile for Plaintiff to pursue a final decision before initiating its lawsuit when a favorable decision for Plaintiff was subsequently issued. On January 4, 2021, Defendant Planning Board issued a negative SEQRA declaration, allowing the project to proceed. And on August 30, 2021, Defendant Planning Board approved its site plan application. Any evidence that Defendants "dug in [their] heels and made clear that all such applications will be denied," *Murphy*, 402 F.3d at 349, or moved the finish line "just one

step away," *Sherman*, 752 F.3d at 561, is decisively undermined by Defendants lifting their heels, erecting a finish line, and allowing Plaintiff through it.  Although it may have been unlikely that Plaintiff's project would have been approved, and a variance to LL4 granted, it was not inevitable. *Nenninger v. Vill. of Port Jefferson*, 509 Fed. Appx. 36, 39 (2d Cir. 2013) (holding that futility requires a "finding that the application inevitably would be denied on its merits").  Here, Plaintiff has failed to submit an application for a variance and given Defendants' ultimate approval of the project, it is not inevitable that a variance would have been denied.

Lastly, Plaintiff claims that the favorable planning board decision while this case was pending ripens the current dispute.  The Second Circuit, however, has stated, that the finality requirement must be satisfied "before attempts are made to adjudicate the constitutionality of regulations purporting to limit such use."  *Murphy*, 402 F.3d at 349; *Sunrise Detox*, 769 F.3d at 121 ("Because ripeness is a jurisdictional inquiry, landowners bringing zoning challenges must meet the high burden of proving that we can look to a final, definitive position from a local authority to assess precisely how they can use their property before this Court may entertain their claims") (internal quotations and alterations omitted).  Plaintiff directs this Court to no authority that a zoning dispute may ripen after it has been filed.[4]

### IV. CONCLUSION

After careful review of the record, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendants' motion to dismiss (Dkt. No. 40) is **GRANTED;** and the Court further

---

[4] The Third Circuit held that Rule 15 allows a plaintiff to supplement their complaint to cure ripeness issues in a zoning dispute. *See T Mobile Ne. LLC v. City of Wilmington, Delaware*, 913

14

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 8, 2022
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

F.3d 311, 326-32 (3d Cir. 2019).  Plaintiff, here, however, has not moved to supplement its complaint.